Richardson, J.
dissenting. The object of the appeal is to show that the 9th art. 6th sec. of the State Constitution establishes in South Carolina not merely trial by jury, as a general judicial form, to decide questions of fact, but establishes unalterably jury trial, as restricted, qualified and improved by the statutes of this State, and approved by our own experience.
Every lawyer knows the great difference between determining a case, by twelve men selected by litigants of unequal skill, and determining the same case by twelve good and lawful'inen, “ Omni exceptione majores.” The tribunal so formed constitutes the proper trial by jury — -a tribunal which affords to a simpleton or guileless man, to a stranger, or sojourner in the State, as nearly as possible, equal chance for justice as to the cunning, the wary, or the keen inspector of his neighbor’s ways of thinking or interests.
The first object of inquiry is, therefore, whether the Constitution renders inviolable the trial of facts, by the specific *503 and established jury of South Carolina, or only establishes trial by jury generally — and 2d, whether the Act of 1841, 'by allowing two challenges to each litigant, at will, in all civil trials, essentially violates the particular establishment of juries in South Carolina? With very brief comments of my own, I purpose leaving the history, the learning and the variety, as well as the exposition and value of trial by jury, to that comprehensive and eloquent chapter of Sir William Blackstone “on jury trials,” 3 vol. cjr. 23.
In giving my own opinion, I aim at no more than to form a supplement to the^ argument drawn from our statutes, by attempting to separate, into its constituent parts, the 9th Art. 6th sec. of the State Constitution — namely, “the trial by jury, as heretofore used in this State, and the liberty of the press, shall be forever inviolably preserved.”
Such analysis is, of course, intended to see if each part does not point to one particular meaning; and unite in presenting it as the true and peculiar aim of the Constitution.
First, then — what do the terms “the trial by jury” mean? These terms are not trial by jury, but “ the trial by jury.” Is the definite article “the” a casual superfluity, or is it here used in its proper sense — ■i. e. as the index to particularity? “Trial” means the examination of a cause of action, according to law, before a judicial tribunal, having jurisdiction to try and decide the case made by its evidence. — 1st Just. 126; 3 Jacobs, 668.
“Trial,” so defined, admits of different evidence in the judicial examination, and may be before many other tribunals than the Judge and jury — for instance, by witnesses before a single Judge in Equity, or the Ordinary. The trial may be by record or by inspection, &c., or exclusively by the Judge. Hence the necessity of the introduction, into the Constitution, of the terms “trial by jury.” No other manner of trial than that “by jury” is guarded by this constitutional article.
But if jury trial, in some form or other, had been the only object of the Constitution, the definition of this trial would have ended with the terms, “trial by jury.”
*504 Look, therefore, at the words that follow, how full of meaning— “The trial by jury, as heretofore used in this State,”' and we there see, as with open eyes, why the sentence began with the definite article — “The trial, as heretofore used.”
These latter terms are either needless and unmeaning expletives — so unlike the exact precision of the rest of the constitution ; or they mean, the trial as practised, and the jury as constituted, by the laws and usages of South Carolina. No other jury pan be meant.
Not the jury formerly impanneled for each several case : not the old jury chosen by the Sheriff;' nor such a jury as a political majority of the State might enact with indefinite challenges by the State, which might end in a selection of men to ensure the conviction of the accused.
Such a possible misuse of the right of challenging ought of itself, to forbid all alterations in challenging jurors, and ought to assure the State against any other jury, but that constituted by forty-eight names drawn from the jury box, by a child ; and from that forty-eight the number twelve again drawn from the whole panel, also by a child.
A jury subject to certain challenges for good cause in four particulars, and for favor ' to a certain extent defined by law, and not otherwise.
A jury, in which the State, in civil actions, can have no advantage of challenging jurors,.over individual litigants ; and in capital felonies, much less advantage, alf settled by express law, for which see the Act of 1731, 3 Stat. 27 p.
it is such laws which give the meaning’of the words, “ as heretofore used in this State.”
Every word points to the one definite aim look at the emphatic, “this State.” It would.seem as if the constitutional statesman was still guarding the judieiabexpounder against any vague general expositions &f this well weighed, comprehensive, but precise context.
Lastly, the concluding word® come heme to the same-particular object and definite aim — what are the -words?' Shall be preserved 'l No. Shall be always preserved t Not so. But “the trial by jury, as heretofore used in this; *505 State, shall be forever inviolably preserved.” This fervid conclusion is in appropriate keeping with the deeply felt and definite constitutional aim.
This impressive sentence ends the six brief sections qf the bill of rights of South Carolina, each of which stands, as a volume of unerring experience, resolved into its quintessence, by sagacious patriots, to guard their posterity.
The venerable Edmond Plowden, in a note to the case of Eyston v. Studd, 2 vol. p. 465, says that “ it is not the words of the law, but the internal sense, that makes the law ; and our law, like all others, consists of two parts, viz : of body and soul — the letter of the law is the body, and the sense and reason is the soul of the law — quia ratio legis est anima legist
I have heretofore confined the argument chiefly to what Plowden calls the body or letter of the law, and have followed the rule laid down by him ; i. e. “ it is never to be intended, that words are put in statutes in vain.” — 1st. vol. p. 80.
This rule applies emphatically and imperatively, To the constitution and fundamental law of the State.
I purpose hereafter, to attend more to what he calls the. soul — i. e. the spirit of the constitution,
A strong conception of its true spirit, is as important, to-the right adjudication of the present question, as its letter..
The jealous caution of the framers of the State Constitution, reminds us that they were recently from a. great struggle for independence ; and more recently from the, then, perilous compromises of the federal constitution.
These master spirits had come home with their jealousy of power wrought up. Such jealousy was not cooled by the situation of South Carolina. The growing upper and lower country, stood before them as rivals for future power. The weaker held the staff.
Hence arise the many compromises, set forth in our constitution.
For instance, the fixed local legislative representation : the division of certain State officers,, between upper and lower country. Their election, down to Sheriff, must be *506 by the Legislature; and. the Judges .must adjourn from Columbia to Charleston, and so on.
May it not have been, that this wholesome conservative spirit, is at the bottom of this 6th section of our bill of rights 'l If so, it plaiuly points to the conclusion, that the trial by jury, means, juries as heretofore used in this State, and no other, “ shall be forever inviolably preserved.”
■ I am not in love with interpretations, exclusively literal, of the great principles of the constitution. But when the letter ex vi termini unites with the body and spirit, ex vis ceribus, and these with the arguments ab inconvenienli, hereafter to be seen, such interpretation is convincing.
This brings us to the second question. Does the Act of 1841 violate, .in any essential matter, the established jury law of the State, by allowing to each litigant the right of challenge, at will, for any or no reason, t.wo jurors of the twelve impanelled, in addition to the challenges, allowed by law, at the adoption of the constitution 1 These challenges were in 1791, as they stood at common law, and as set forth in the 23d ch., vol. 3d, of Blackstone. — See Act 1731, sec. 26th.
Let me here remark, in passing, that I have never considered the Act of 1841 as in any way inexpedient, except when I view it as a precedent to further infractions of the constitutional system of jury trial inviolably fixed in our judicial system. Further, that I perceive no essential infraction of the constitutional establishment of juries (as before used,) either in the alteration of the jurors’ qualifications, or in the paying them, or fining them, or in the manner of summoning them, or the like, as made by successive Acts, before and since the adoption of the Constitution.
Such alterations are matters of mere convenience, and are common every where ; they belong to the regulating and police, or behaviour, not to the constitution of that tribunal of justice. For such alterations see 6th Statute Geo. 4th, ch. 50, in England.
Challenges at common law, in all civil actions, are for good cause ; this forms their foundation ; challenges there *507 fore without cause, changes that essential characteristic ; so too, any power to challenge at will, strikes at the impartiality of the jury. 1st. Because it is calculated to pervade the mind of the substituted juror, that he is depended on by the party challenging, in contract to the original displaced juror ; 2d. It explicitly alters the impartial draught of jurors made by the child according to the Act of 1731 ; 3d. It puts power into the hands of litigants of unequal skill, in the direction of that power. Litigation is often as warfare — fancy in this respect the difference in managing such a power between a stranger and a native resident of skill and popular tack. The law ought not to increase the unavoiduable disadvantage of strangers to the people, and this alone would justify the jealous caution of the constitution. Finally it enables every litigant to relieve two jurors from immediate duty, if whimsically disposed, and to put it on two others ; ought he to be allowed to do this, without showing some cause? *
For these reasons, the conclusion of my judgment is, that the Act of 1841, impairs the particular constitution of juries as established in South Carolina in two essential objects of that establishment; 1st. In introducing the right of challenging jurors in civil actions without showing any cause, and when too, the cause for challenges had been settled, definitely and immemoriaily, by law, without.the smallest alteration, until the Act in question. The established doctrine of challenges was never tampered with before, either in England or this country.
2d. It violates the jury establishment of this State, byintro-ducing a new way of constituting the jury, very different from the impartial draught directed by the Act of 1731, 3d Stat. at Large, p. 274, and so long practiced and approved in South Carolina.
I would apply to this first dangerous invasion of our jury establishment, the conservative principle of í( obsta prin-cipies
Resist such innovation in its earliest stage, and thus underwrite the guaranty of the venerated and sagacious con- *508 veution of 1791, the gnaraty “of the trial by jury as heretofore used in this State.”
Do this, and having thus done our part, we might well say with Sir Edward Coke and Sir Wm. Blackstone, of the trial by jury, “ esto perpetua."
For such a jury as that established by our Constitution they made this earnest ejaculation, and such a jury, and the liberty of the press, our great fundamental law has declared “shall be forever, inviolably preserved.”